IN THE MATTER OF THE ESTATE OF CORA C. ENSMINGER; GILLE
*v.* INDIANA NATIONAL BANK OF INDIANAPOLIS,
EXTR. & TRUSTEE, ET AL.

[No. 468A54. Filed April 7, 1969. Rehearing denied May 27, 1969.
Transfer denied July 23, 1969.]

*Frank W. Morton, Thomas C. Tumbove, Richard A. Rogers* and *Morton, Tumbove & Rogers,* all of Indianapolis, for appellant.

*Patrick J. Smith, Russell J. Ryan, Jr.,* and *Smith, Morgan & Ryan,* of counsel, all of Indianapolis, for appellee Indiana National Bank of Indianapolis.

*Karl J. Stipher, Virgil L. Beeler,* and *Baker & Daniels,* of counsel, all of Indianapolis, for appellees William H. Norman, Marian Norman, Ivan I. Iliff and Trustees of Indiana University.

PER CURIAM.—On February 4, 1966, Cora C. Ensminger, a resident of Marion County, Indiana, died testate leaving a will which was duly admitted to probate on February 7, 1966, and the appellee, The Indiana National Bank of Indianapolis was, on the same date, appointed executor thereof.

The dispositive provisions of the last will and testament of the deceased which are pertinent to the controversy now before us are as follows:

### "ITEM TWO

"I hereby will, devise and bequeath to my husband, Leonard A. Ensminger, if he survives me, all of my estate, real, personal and mixed, wheresoever the same may be situated and whether now owned by me or hereafter acquired to be his absolutely and forever.

### "ITEM THREE

"In the event my husband, Leonard A. Ensminger, does not survive me and I inherit from him, I hereby make the following specific bequests:

"(a) To Ivan I. Iliff, who for years was a faithful employee, if he is living at my death, the sum of One Thousand Dollars ($1,000.00) in cash. If he is not living at my death then this legacy shall lapse.

"(b) *I give and bequeath to Ruth Elizabeth Crawford Gille, presently of Kirkwood, Missouri, if living, such of the clothing, personal effects, jewelry, and objects of art,* which I may have the right to dispose of, as Ruth Elizabeth Crawford Gille may select within such reasonable time, but in no event less than ninety days, after my decease as may be fixed by my executor.

"In making the foregoing bequests, I am not unmindful of the fact that I have a number of relatives with whom however, I have had little or no connection for a great many years, and whom I am purposely not including in any bequests or devises made under this Will. (Emphasis supplied.)

## "ITEM FOUR

"If my said husband, Leonard A. Ensminger, should predecease me and I inherit from him then if my net estate has a value of Fifteen Thousand Dollars or less after payment of the debts, expenses and taxes provided for in Item One hereof and the specific bequests provided for in Item Three hereof, I will, devise and bequeath the rest, residue and remainder of my property, real, personal and mixed to William H. Norman, M.D., if living, and if he is not living at my death then to his wife, Marian Norman, if living, and if she is not living at my death, then equally among the children of William H. Norman and Marion Norman, living at my death, and if no such child or children are living at my death then the said residue shall be distributed as provided in Item Five of this Will immediately following.

## "ITEM FIVE

"If my said husband, Leonard A. Ensminger, should predecease me and I inherit from him then if my net estate exceeds Fifteen Thousand Dollars after payment of the debts, expenses and taxes provided for in Item One hereof and the specific bequests provided for in Item Three hereof, *I will, devise and bequeath the rest, residue and remainder of my property, real, personal and mixed to the Indiana National Bank of Indianapolis,* IN TRUST NEVERTHE-

LESS subject to the conditions, restrictions, provisions, powers and duties hereinafter set forth:

"1. The Trustee shall invest and reinvest from time to time, the corpus of the trust in United States Government Bonds and/or short term United States obligations and/or revenue or general obligation bonds of municipalities.

"2. The Trustee may pay itself reasonable compensation and may employ and pay professional assistance as it, in its sole discretion, may deem necessary or advisable, it may also borrow money from any source including itself and secure the repayment by a pledge of any assets in the trust.

"3. The net income from the trust shall be paid semiannually to William H. Norman, M.D. if living at date of payment, and for so long as he shall live, and upon his death, said income shall be paid to Marion Norman, if living, at date of payment and for so long as she shall live.

"4. This trust shall terminate upon the death of the last to die between William H. Norman, M.D. and Marion Norman, his wife, and the corpus of the trust and any undistributed income therein, after payment of any expenses of the trust, shall be paid over to the Trustees of Indiana University now located at Bloomington, Indiana, to be known as the Ensminger Loan Fund and for use solely and exclusively as follows: . . ." (Emphasis supplied.)

The record on appeal shows that Leonard A. Ensminger, primary beneficiary under the will hereinbefore set out, did predecease the testatrix, Cora C. Ensminger, and further, that the net value of the testatrix's estate was of an amount substantially in excess of Fifteen Thousand Dollars. Therefore, the most significant provisions of the will are Item Three and Item Five, and the interpretation of these dispositive provisions serves as the primary question in this appeal.

On May 16, 1966, subsequent to appellant's petition, appellant was, by order of the Marion Probate Court, recognized as an interested person in the estate of the deceased. On October 16, 1967, appellant filed her amended petition for

construction of the will, alleging therein that Item Three (b) contains an ambiguity as to what items the testatrix intended to be "personal effects", and further, alleging that the following items were "personal effects" within the meaning of the will: furniture, household goods, shares of stock in domestic corporations, treasury bonds, savings bonds, amounts in checking and saving accounts, life insurance proceeds, cash and jewelry. Thereafter, counsel for all parties agreed that the original separate motions for summary judgment of the appellees were to be refiled and addressed to appellant's amended petition for construction of the will. Both of said motions for summary judgment, one filed by the appellee-executor and trustee, and another filed by the appellees-beneficiaries, alleged that there was no genuine issue of a material fact alleged in the appellant's petition and that as a matter of law the term "personal effects" as used in the will does not raise any issue capable of factual determination, but rather constituted a strictly legal question. The motions for summary judgment further alleged that the specific bequest of "personal effects" did not include currency, bank accounts, stocks, bonds, insurance proceeds and investment assets.

On January 3, 1968, the Marion Probate Court entered judgment sustaining appellees' motions for summary judgment, and said judgment declared there to be no determinable issue of a material fact. The judgment specifically found that the specific bequest of "personal effects" in Item Three (b) of the will did not include any currency, cash, bank accounts, stocks, bonds, insurance proceeds or investment assets.

It has been stated that the sustaining of a motion for summary judgment is prejudicial to a non-prevailing party in that said party is prevented from having his day in court, and, therefore, courts of appeal carefully scrutinize trial court determinations of motions for summary judgment. *Jose v. Indiana National Bank of Indi-*

*anapolis* (1966), 139 Ind. App. 272, 218 N. E. 2d 165, 167. In the instance of error in the summary judgment proceedings, requisite scrutiny compels reversal unless the error is harmless and no useful or corrective procedures could be taken on reversal.

The propriety of awarding summary judgment against appellant's petition for construction of the will is the first issue which we must determine in this appeal. Although not specifically stated in the applicable Indiana statutes, the court believes that a petition to construe a will is a complaint within the meaning of Acts 1953, ch. 112, § 605, p. 295, Burns' Ind. Stat., § 6-605, and Acts 1965, ch. 90, § 1 , p. 126, Burns' Ind. Stat., § 2-2524. Section 6-605 provides as follows:

> "Construction of will.—The court in which a will is probated shall have jurisdiction to construe it. Such construction may be made on the petition of the personal representative or of any other person interested in the will; or, if a construction of the will is necessary to the determination of an issue properly before the court, the court may construe the will in connection with the determination of such issue. When a petition for the construction of a will is filed during administration of the estate, notice of the hearing thereon shall be given to interested persons. If the estate has been closed prior to the filing of such petition, notice shall be given as in civil actions."

The last sentence of § 6-605, *supra,* when read in part with subsection (b) of § 2-2524, *supra,* which states that summary judgment is available to any party "against whom a complaint, counter-claim or cross-complaint is asserted or a declaratory judgment is sought" leads this court to believe that a petition to construe a will filed after an estate has been closed is by nature an adversary proceeding and that said petition constitutes a complaint instituting a legal action which may be resolved by summary judgment.

In the instant case, however, the petition for construction was filed before the closing and during administration. Our

statutes (and case law) are silent as to whether the filing of a petition for construction prior to closing is analogous to the commencement of legal proceedings. We decide the foregoing question in the affirmative as it appears that no real distinction is made in the statute between petitions filed prior to or subsequent to the closing of the estate. In both situations, the statute provides for the giving of notice to all interested persons and the last sentence thereof refers to notice as given in all civil actions. We see no need in further burdening the summary judgment statute with a distinction as to when it is available in probate proceedings.

The adversary nature of a petition for construction of a will allows summary judgment where, as in this case, there is no genuine issue of a material fact. At an earlier point in this opinion we stated that the court would not reverse the granting of summary judgment where, even in view of possible prejudice to the opposite party, no useful or corrective procedures could be had on reversal. This is the situation now before us. While we must interpret statutes that are uncertain as to the propriety of summary judgment in this situation, reversal of the Marion Probate Court on a question of procedure would serve no useful purpose, because that court made the correct legal determination of the use of the term "personal effects" as used in the will of Cora C. Ensminger.

The second issue presented in this appeal is the meaning of the term "personal effects". It is our opinion that this will did not require construction. The intent of the testatrix must prevail, and in looking to the instrument itself, we cannot say that the testatrix intended the appellant to have more than "personal effects". For the following reasons, that term, as used herein, may not indicate an intention to bequeath any more than items closely associated with the individual decedent.

Item Three (b) of the will is a specific bequest of clothing, personal effects, jewelry and objects of art. The placement of the term "personal effects" does not permit us to invoke the doctrine of *ejusdem generis* and, therefore, prevents an interpretation which would limit items of personal effects to those items of personal property described in the same phrase. Strictly speaking, the employment of the doctrine has been limited to instances where the term "personal effects" appeared as the last of similar, more particularly enumerated items, thereby allowing the interpretation that personal effects are items similar to those described just preceding the term "personal effects." Where, as in this case, other provisions of the will are clear and unambiguous, the rule of strict placement of the term seems burdensome and unnecessary, and we favor a more liberal interpretation so as to avail ourselves of the doctrine.

The problem of construction raises a question of law and the subsequent necessity to determine intent. In so doing, we adhere to the established practice of looking to the four corners of the instrument.

In the will in the case at bar, the deceased's husband, if he survived, was to receive all of her estate, real, personal and mixed. The fact that he predeceased the testatrix requires us to look further to Item Three and the two specific bequests therein. In Item Four the testatrix intended that appellees, William H. Norman or his wife, Marian Norman, or their children, or if none of these individuals survived, then to the trustees of Indiana University, residuary legatees mentioned in Item Five, and necessarily beneficiaries under Item Four because of the provisions thereof, were, after distribution of the specific bequests of Item Three and a total estate value of less than Fifteen Thousand Dollars, to have the rest and residue of all of the decedent's real, personal or mixed property.

We regard Item Five as the most significant dispositive provision, and further assert that the language contained

therein controls the question of intent presented on appeal. Item Five reads in part as follows:

"If my said husband, Leonard A. Ensminger, should predecease me and I inherit from him then if my net estate exceeds Fifteen Thousand Dollars after payment of the debts, expenses and taxes provided for in Item One hereof and the specific bequests provided for in Item Three hereof, I will, devise and bequeath the rest, residue and remainder of my property, real, personal and mixed to The Indiana National bank of Indianapolis, IN TRUST NEVERTHELESS subject to the conditions, restrictions, provisions, powers and duties hereinafter set forth: . . ."

In our opinion, appellant's alleged construction would destroy this testamentary trust. It is difficult to imagine that the testatrix would have included this lengthy provision in her will had she not wished to give it effect. Item Three (b), when considered with Item Five, definitely shows that the deceased intended her personal property to be disposed of pursuant to Item Five, and further, that said property was not to be included in the term "personal effects" as provided in Item Three (b). Our construction is correct in that it gives effect to the entire instrument and does not destroy a part thereof, as the appellant would have us do. We do not believe there to be any conflict in the provisions, but even in that instance Item Five would govern because it is the latter in point of time.

We agree with this court's reasoning in the case of *Apple et al. v. Methodist Hosp.* (1966), 138 Ind. App. 420, 422, 206 N. E. 2d 625 (Transfer denied).

". . . It is a universally recognized rule that the intention of the testator, when it is clearly expressed must be given effect in the construction of a will. *Hutchinson's Estate v. Arnt* (1936), 210 Ind. 509, 1 N. E. (2d) 585, 108 A. L. R. 530. Rehearing denied 210 Ind. 509, 4 N. E. (2d) 202, 108 A. L. R. 530.

"However, it is also a well recognized rule that where the intent is not clearly expressed, or is couched in ambiguous

phraseology so that reasonable differences of opinion may exist as to what the testator's intention was, then this court will look to established rules of construction in ascertaining the testator's intention. *Board of Commissioners of Rush County v. Dinwiddie* (1894), 139 Ind. 128, 37 N. E. 795."

We deem it unnecessary to explore the effect of the second paragraph quoted above, but shall do so in order to answer appellant's contention that reasonable definitions of the term "personal effects" often differ.

First, we must consider the following statement of this court in the case of *Mundhenk v. Bierie* (1924), 81 Ind. App. 85, 135 N. E. 493 (Transfer denied):

"It is a well-established rule of law that the words in a will are to be understood to have been used by the testator in the common and ordinary sense, and no word can be rejected and another substituted in its place, without the clearest certainty that such was the intention of the testator. *State ex rel. v. Joyce* (1874), 48 Ind. 310; *Wilson, Admr., v. White* (1893), 133 Ind. 614, 33 N. E. 361, 19 L. R. A. 581; *West v. Rassman* (1893), 135 Ind. 278, 34 N. E. 991.

"It is also a rule of law that the terms of a will will be construed in accordance with the intention of the testator where such intention does not conflict with the law, the presumption being that such will was drawn in the light of the settled meaning attached to the words used therein. *Taylor v. Stevens* (1905), 165 Ind. 200, 74 N. E. 980."

This case serves to reaffirm our belief that the will herein is not in need of construction because the meaning of the term can be easily garnered from reading the provisions of the will. The term "personal effects" has not often been subject to definition in courts of appeal, and this court is without an Indiana definition. However, in *Skinner v. Spann* (1911), 175 Ind. 672, 93 N. E. 1061, 95 N. E. 243, the words "personal property" were held to be comprehensive enough to encompass "all goods, chattels, notes, bonds, mortgages, choses in action, and money held and possessed by the testatrix at the date of her death."

In looking to other jurisdictions, we find that the Supreme Court of Pennsylvania, in the case of *In re Beisgen's Estate* (1956), 387 Pa. 425, 128 A. 2d 52, held that a specific bequest of "all my personal effects, including clothing and household goods" did not include securities and bank accounts. In *Gaston v. Gaston* (1947), 320 Mass. 627, 70 N. E. 2d 527, personal effects were held to mean ". . . only those articles of tangible personal property that in their use or intended use had some connection with the person of the testatrix".

Therefore, the term "personal effects" as used in the will in the case before us, which is not in need of construction, and from which the intent of the testatrix can clearly be determined, may only be defined as those items closely associated with the person and may not, as the Marion Probate Court correctly determined, include currency, cash, bank accounts, stocks, bonds, insurance proceeds or investment assets and other items which are generally recognized as personal property.

For the foregoing reasons, the judgment of the Marion Probate Court is hereby affirmed. Costs v. appellant.

NOTE.—Reported in 246 N. E. 2d 217.