DANIEL ZAWACKI ET AL. *v.* WANDA DRAKE ET AL.

[No. 570A73.  Filed July 22, 1971. Rehearing denied August 25, 1971. Transfer denied November 29, 1971.]

*Martin A. Karr, Charles C. Delnicke,* of East Chicago, for appellants.

*Henry S. Knowalczyk, Rudolph Tanasijevich,* of Hammond, for appellees.

SULLIVAN, P.J.—Plaintiffs-Appellees, the adopted children of Frances Andrzejewski, Deceased, filed their action against the decedent's legal representative and the principal legatee of the decedent, appellants herein, to contest and set aside decedent's will. The principal legatee, Daniel Zawacki, was at all times pertinent a citizen and resident of Poland. After trial of the issues to the court, the following finding and judgment was entered:

> "That decedent Frances Andrzejewski was of unsound mind at the time she made her will. Said will dated November 3, 1964, is now declared invalid and all proceedings in Estate No. 6343 is set aside.
>
> "IT IS THEREFORE CONSIDERED, ADJUDGED AND DECREED by the Court that the Will of Frances Andrzejewski dated November 3, 1964, be and is hereby declared invalid and all proceedings in Estate No. 6343 be and is hereby set aside."

The principal contention of appellants is that the finding and decision of the court is not sustained by sufficient evidence and is contrary to law in that the evidence fails to support the finding that decedent was of unsound mind at or about the time that she executed her will.

A review of the record discloses that the only expert witness

to testify, the decedent's attending physician, stated that during the year 1964, to and including the month in which decedent executed her will, she had problems recognizing or remembering things. He added that she was often severely depressed and she had partial loss of memory and occasional disorientation with surroundings. He concluded from his observations of decedent's manner, habits and conduct that decedent was of unsound mind on November 4, 1964, and for some period preceding. In addition, four neighbors and friends testified similarly. They pointed out that the decedent was a recluse and was distrustful of virtually everyone who came in contact with her, that she often talked incoherently, that her house was "full of junk" and was extremely filthy, and that she did not take care of her personal hygiene. One such witness testified that based upon decedent's demeanor, her speech and how she kept herself and her house, "I didn't think she was of sound mind to live in the condition she was living in and doing some of the things she was doing."

The fact that there was conflicting evidence as to the decedent's mental capacity is of no consequence to the inevitability of our required determination upon this issue, notwithstanding the fact that we might well have reached a different conclusion than did the trial judge. *J. I. Case Co.* v. *Sanderfur* (1964) 245 Ind. 213, 197 N. E. 2d 519.

Appellants rely heavily upon *Keplinger* v. *Ward* (1946) 116 Ind. App. 517, 65 N. E. 2d 644, wherein the court stated:

> "The test of the capacity to make a deed is that the grantor shall have sufficient mind and memory to comprehend the nature and extent of his act and to understand the nature of the business in which he is engaged, and to exercise his own will with reference thereto. (Citation omitted).

> "There is no evidence of such incapacity. Several lay witnesses testified that in their opinion the grantor herein was of unsound mind. But the opinion of non-expert witnesses that a person is of unsound mind can have no greater weight than the facts upon which such opinion is based. (Citation omitted).

"In the instant case these opinions were based upon such unsubstantial facts as that the grantor talked loudly and cursed about politics, money matters and his family, that he was unkempt and dirty, that he said upon occasions that he had become lost, and that he occasionally rambled in his conversations from one subject to another.

"The grantor was 83 years of age, had dropsy and was suffering from some of the infirmities of old age. But a person is not incapacitated to make and execute a deed merely because of advanced years or by reason of physical infirmities unless such age and the infirmities resulting therefrom impair such person's mental faculties until he is unable to properly, intelligently and fairly protect and preserve his property rights." (Citation omitted). 116 Ind. App. 517, 520-521.

We do not dispute the apparent similarity between the facts of that case and those of this appeal, nor do we dispute the wisdom of the court's determination in that case. Neither do we imply that infirmities of old age, of themselves, are necessarily indicative of unsoundness of mind in the legal sense. It must be noted, however, that in the *Keplinger* case there was no expert testimony to the effect that the grantor there was of unsound mind. In this cause, the *only* expert who testified stated that in his opinion the testatrix was of unsound mind. In making this distinction, we do not mean to import that expert testimony in and of itself is entitled to any greater weight or credibility than that of lay witnesses upon subjects which are as well within the knowledge of laymen as of experts. The medical conclusion here involved, however, is very strongly affected by the conclusion drawer's ability to discern mental capability as disclosed by conduct and demeanor. Such ability is greatly enhanced by one's professional training and practice. It would not have been inappropriate, therefore, for the trial court to view the testimony of the attending physician in a more favorable light than that of controverting lay witnesses. We are accordingly unable to say with legal conviction that the persuasive effect of the *Keplinger* case militates in favor of reversal.

Appellants' second and final contention rests upon the fact that appellee Wanda Drake took into her possession certain items of clothing and other personal effects belonging to the decedent and sold them, from which she realized and retained the sum of $152. It must be pointed out that Mrs. Drake did so, according to the evidence, at the insistence of appellant Jean Podoski, the Executrix, who telephoned on numerous occasions demanding that Mr. Drake "get the stuff out of there."

Be that as it may, appellants contend that Mrs. Drake, if not both appellees, is by her conduct estopped to deny the validity of the will since she thereby exhibited her acceptance of the benefits of the dispositive provisions of the will. This contention is without merit. The will in question bequeathed to Mrs. Drake only "the sum of two thousand dollars ($2,000.00), cash, and all of my household furniture and household goods." The items appropriated and sold by Mrs. Drake cannot be considered household goods or furnishings. All parties admit such items to have been personal in nature. *In Re Estate of Ensminger* (1969), 144 Ind. App. 338, 246 N. E. 2d 217.[1]

Judgment affirmed.

Buchanan, Lowdermilk and Robertson, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 511.

---

1. In passing and solely as a procedural aside, it might be noted that appellants did not, as required by accepted rules of pleading in effect at the time this cause was pleaded and tried, inject the issue of estoppel as an affirmative defense. *Schill* v. *Choate* (1969), 144 Ind. App. 543, 247 N. E. 2d 688. Since Mrs. Drake, however, did realize pecuniary advantage from the sale of decedents personal items to the extent of $152, we would necessarily assume that her final distributive share will be correspondingly adjusted.